AKRON BAR ASSOCIATION *v.* CARR.

[Cite as *Akron Bar Assn. v. Carr,* 131 Ohio St.3d 210, 2012-Ohio-610.]

*Attorney misconduct—Charging a clearly excessive fee—Six-month suspension stayed on conditions.*

(No. 2011-0803—Submitted August 8, 2011—Decided February 22, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-047.

_____

**Per Curiam.**

{¶ 1} Relator, Akron Bar Association, filed a complaint against respondent, Jeffrey A. Carr, Attorney Registration No. 0081745, for violating the Rules of Professional Conduct, specifically Prof.Cond.R. 1.4(a)(2) and (b) (requiring that an attorney reasonably consult with the client about how the client's objectives are to be achieved and that he explain the matter to the client so that the client can make informed decisions), 1.5(a) (prohibiting an attorney from charging or collecting an illegal or clearly excessive fee), 1.5(b) (requiring an attorney to communicate the nature and scope of the representation to the client and the rate of the fee, preferably in writing, before or within a reasonable time after commencing the representation), and 8.4(a), (c), (d), and (h) (prohibiting conduct that violates the Rules of Professional Conduct, conduct involving dishonesty, conduct prejudicial to the administration of justice, and any other conduct that adversely reflects on the lawyer's fitness to practice law). The panel's findings, which were adopted by the Board of Commissioners on Grievances and Discipline, were that Carr had charged a clearly excessive fee in violation of Prof.Cond.R. 1.5(a) but that the other charges had not been proved.

The panel recommended a six-month suspension, all stayed on five conditions. The board adopted the panel's recommendation, and we concur.

**Factual Background**

{¶ 2}  After a career in school construction and construction arbitration, Carr became licensed to practice law in Pennsylvania in 2003 and in Ohio in 2007.  At the time of the hearing in this matter, Carr was employed as a college instructor, and his bar registration status was—and remains—inactive.

{¶ 3}  This case arises from Carr's representation of Silas Pearson, who had purchased a home in Akron and who asserted that he had been misled into making the purchase by the representation that the annual property taxes on the home would be lower than they turned out to be.  Engaged to represent Pearson in December 2008, Carr charged $240 per hour for his efforts over a ten-month period to prosecute a lawsuit against Coldwell Banker Hunter Realty ("Coldwell Banker") and the real-estate agent involved in the purchase.  The record contains monthly invoices for December 2008 through September 2009 (there is no invoice for August 2009).  The invoices for work through July totaled $13,944 for 58.1 hours of work, and Carr had received $6,750 in payments from Pearson over that period.

{¶ 4}  At a mediation conference in September, the case was settled for $7,500.  On the invoice for September 2009, the final invoice, Carr billed for 4.0 hours for the mediation and 0.4 hours for "dismissal," for a total of $1,056 in additional fees related to the mediation and settlement.  The invoice then brought forward the previous balance of $7,194, for a new balance of $8,250.  Next, Carr allowed a $1,000 fee reduction, which brought the balance to $7,250.  Finally, Carr offset the $7,250 balance against the $7,500 settlement proceeds and indicated that Pearson would receive $250.

{¶ 5}  The settlement check was made out to Carr.  Carr sent a check for $250 to Pearson and retained $7,250 for payment of his fees.  Thus, Pearson paid

$14,000 in fees and received a $250 check, reflecting 3.3 percent of the settlement proceeds.

**Disciplinary Proceedings**

**{¶ 6}** Based on its investigation of a grievance filed by Pearson, relator filed its complaint against Carr with the board on June 14, 2010, and the case was heard before a panel on December 15, 2010. At the hearing, Carr testified, as did Pearson. In addition, the deposition of attorney R. Scott Haley was admitted into evidence as expert testimony on the subject of the reasonableness of the fees charged. Pearson's wife, who had written the checks to Carr to pay the attorney fees and who was the primary contact between Pearson and Carr, was deceased at the time of the hearing.

**{¶ 7}** Conflicting testimony was offered concerning the initial meeting between Carr and the Pearsons. Carr testified that he had met with the couple at the Akron Bar Association headquarters in late November 2008. By contrast, Pearson testified that he had met with Carr on three occasions, but never at the bar-association headquarters.

**{¶ 8}** Carr testified regarding the invoices he had sent to Pearson, which set forth the time he had spent on Pearson's case in hour and tenth-of-an-hour increments. For December 2008, Carr billed 12.8 hours, consisting of 4.9 hours for drafting and filing the complaint, 4.2 hours for drafting interrogatories, and 3.7 hours for case strategy and research. The invoice totaled $3,072 for the hours, plus $250 for the filing fee for the complaint. Carr testified that the December invoice included a review of documents supplied by the Pearsons, a conversation with a real-estate agent concerning real-estate law, review of documents at the county fiscal office to determine the property taxes charged, and online research on the Ohio Association of Realtors website regarding the liability of Coldwell Banker as opposed to the individual agent. Carr testified that he had kept track of his time for invoicing purposes by writing on his desk-pad calendar and that he

had torn off and discarded the calendar's monthly page at the end of each month. Thus, he could not produce documentation to substantiate the time he had indicated on the invoices. Carr also had no evidence of the fruits of the time spent on research.

{¶ 9} Carr stated that he had met with Pearson's wife on three occasions after the initial meeting in November 2008, once in February, once in March, and once in April 2009. He claimed that the March and April meetings had been at a McDonald's restaurant. Carr explained that because Pearson was ill, he was not at the meetings. Pearson testified that during the relevant period, he spent weekdays in Wilmington, where he was employed. Pearson had contracted spinal meningitis and spent six months in a nursing facility beginning in April 2008. Pearson testified that his wife did not drive, so he would have had to have taken her to meetings with Carr, and he never took her to a meeting with Carr at McDonald's.

{¶ 10} Carr testified that he had prepared and sent a fee agreement to Pearson, but it had never been sent back, and he had not retained a copy for himself. Pearson testified that he had never received a fee agreement.

{¶ 11} With respect to the settlement money, Carr claims that he explained to the Pearsons that they owed more than the $7,500 settlement amount in fees but that he would accept the proceeds as full satisfaction. Pearson asserts that he did not know that any of the $7,500 would go toward fees.

{¶ 12} Relator elicited the testimony of R. Scott Haley, an Akron attorney, as an expert on real-estate litigation and associated legal fees. A deposition of Haley was offered as evidence at the hearing, and Carr stipulated to its admission as evidence. Haley testified that the property tax on any particular parcel is readily available to any member of the public either at the Summit County Fiscal Office or online. Thus, Carr could not reasonably charge for much time to research that information.

{¶ 13} Haley testified that the time Carr charged for drafting and filing the complaint, 4.9 hours, was unreasonably high for the complaint that was filed. Haley opined that the complaint does not even properly plead a claim of fraud, because it does not contain specific facts, as required by the Civil Rules. Moreover, the fraud claim was intrinsically weak because the taxes on the property were a matter of public record, so Pearson could have checked what they were before purchasing the property.

{¶ 14} When asked about specific increments of time that Carr had billed for legal research and case strategy—he billed a total of 12.1 hours over three months—Haley stated that it would be typical for an attorney to print out cases and make notations for such extensive research, and he found no such print-outs or notes in reviewing Carr's file. As for interrogatories, Haley testified that 4.2 hours was a reasonable amount of time for Carr to have spent drafting the original set of interrogatories, but with regard to the 2.8 hours billed for preparation of a second set of interrogatories, Haley stated that that amount of time was both excessive and unreasonable. Haley based that opinion on the fact that the second set of interrogatories contained only one question.

{¶ 15} Haley verified that there were no depositions held in the underlying case and opined that billing 13.1 hours for preparing for depositions was unreasonable. Overall, Haley opined that the amount billed, given the inherent weakness of the case and the $7,500 settlement, was clearly excessive.

### Disposition

{¶ 16} The panel found that Carr had charged a clearly excessive fee in violation of Prof.Cond.R. 1.5(a). As mitigating factors, the panel found that Carr has no prior disciplinary record and that he fully and freely cooperated in the prosecution of this matter. See BCGD Proc.Reg. 10(B)(2)(a) and (d). As aggravating factors, the panel found that Pearson was a vulnerable client and had suffered harm as a result of Carr's misconduct. See BCGD Proc.Reg.

10(B)(1)(h). Additionally, the panel found that Carr's misconduct was driven by a selfish motive and that his failure to acknowledge the wrongful nature of his conduct and failure to make restitution were also aggravating factors. See BCGD Proc.Reg. 10(B)(1)(b), (g), and (i). The panel recommended as a sanction that Carr be suspended from the practice of law for six months, with the entire six-month suspension stayed on five conditions: first, that Carr commit no further misconduct; second, that he complete at least six hours of continuing legal education; third, that he submit to the monitoring of his practice by an attorney designated by relator during the entire term of the six-month suspension; fourth, that he make restitution to Pearson in the amount of $7,250; and fifth, that he pay the costs associated with this matter. Because Carr's registration status is currently inactive, the panel recommended that the stayed suspension take effect upon his being restored to active status but that restitution be made and costs be paid prior to his being restored to active status. The board agreed with the panel's findings and recommended sanction, and we adopt both.

{¶ 17} A six-month stayed suspension falls within the range of sanctions that we have imposed in connection with the charging of excessive fees. In *Disciplinary Counsel v. Smith*, 124 Ohio St.3d 49, 2009-Ohio-5960, 918 N.E.2d 992, a public reprimand was issued to a relatively inexperienced attorney who, when disbursing payments from an insurance company to his clients, deducted a contingent fee from the payment despite the fact that the controlling law prohibited the collection of contingent fees from such payments. In deducting the fee, the attorney acted under the order of his boss. Because the respondent had been acting under a senior lawyer's directions, had no prior disciplinary record, and had cooperated in the disciplinary process, we found a public reprimand to be the appropriate sanction.

{¶ 18} In the absence of that type of mitigation, we have imposed a six-month, suspension stayed on conditions, on attorneys who have charged a clearly

excessive fee. See *Toledo Bar Assn. v. Johnson*, 121 Ohio St.3d 226, 2009-Ohio-777, 903 N.E.2d 306; *Cleveland Bar Assn. v. Character-Floyd* (1998), 83 Ohio St.3d 306, 699 N.E.2d 922.

{¶ 19} Accordingly, Carr is suspended from the practice of law for six months, with the entire six-month suspension stayed on five conditions: first, that Carr commit no further misconduct; second, that he complete at least six hours of continuing legal education; third, that he submit to monitoring of his practice by an attorney designated by relator during the entire six-month suspension; fourth, that he make restitution to Pearson in the amount of $7,250; and fifth, that he pay the costs associated with this matter. Because Carr's registration status is currently inactive, the stayed suspension shall take effect upon his being restored to active status, but he must make restitution and pay the costs associated with this matter before being restored to active status.

{¶ 20} Costs are taxed to Carr.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Milton C. Rankins and Vincent J. Alfera, for relator.

Jeffrey A. Carr, pro se.

_____