AKRON BAR ASSOCIATION *v*. CARR.

[Cite as *Akron Bar Assn. v. Carr,* 135 Ohio St.3d 390, 2013-Ohio-1485.]

*Attorneys—Misconduct—Failure to provide competent representation—Charging clearly excessive fee—Engaging in conduct prejudicial to administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Engaging in conduct involving deceit or dishonesty—Indefinite suspension.*

(No. 2012-1699—Submitted January 23, 2013—Decided April 17, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-101.

_____

**Per Curiam**.

{¶ 1} Respondent, Jeffrey Alan Carr, of Akron, Ohio, Attorney Registration No. 0081745, was admitted to the practice of law in Ohio in 2007. In February 2012, we suspended his license for six months, with the entire suspension stayed on conditions, for charging a clearly excessive fee. *Akron Bar Assn. v. Carr*, 131 Ohio St.3d 210, 2012-Ohio-610, 963 N.E.2d 802. At that time, Carr was registered with the Office of Attorney Services as inactive, and we ordered that his stayed suspension shall take effect upon his being restored to active status. *Id.* at ¶ 19. We also ordered that Carr make restitution and pay the costs associated with that disciplinary proceeding before being restored to active status. *Id.* On March 14, 2013, we found Carr in contempt for failing to comply with this court's order to pay costs, revoked the stay of his six-month suspension, and ordered Carr to serve the entire six months as an actual suspension. 134 Ohio St.3d 1490, 2013-Ohio-924, 984 N.E.2d 32.

**{¶ 2}** In December 2011, relator, Akron Bar Association, charged Carr with professional misconduct in a three-count complaint involving a different client. The Board of Commissioners on Grievances and Discipline attempted service of the complaint by certified mail, but service was returned as "refused." The board then served the complaint on the clerk of this court, pursuant to Gov.Bar R. V(11)(B). Even though Carr had earlier appeared for a deposition during relator's investigation of the grievance filed against him, he did not answer the complaint, and relator thereafter moved for an entry of default. The board appointed a master commissioner, who made findings of fact and misconduct and recommended an indefinite suspension. The board adopted the master commissioner's findings and recommended sanction. We, in turn, adopt the board's findings and hereby indefinitely suspend Carr from the practice of law in Ohio.

## Misconduct

**{¶ 3}** Based on Carr's deposition testimony and the sworn affidavits in the record, the board found that Carr acted incompetently, charged clearly excessive fees, made false statements to relator, and prejudiced his clients' interests.

**{¶ 4}** Specifically, in March 2009, Carol Shelly retained Carr, through relator's lawyer-referral service, to represent her and her husband in a case filed against them by the United States government for unpaid federal taxes. At that time, Carr did not have experience litigating tax issues in federal court.

**{¶ 5}** In December 2009, the United States filed a motion for summary judgment against the Shellys and, along with its 23-page brief, submitted 21 exhibits to support its motion, including deposition transcripts, discovery responses, and various tax documents. In response, Carr filed an eight-page brief, without any exhibits or supporting materials—despite the fact that Shelly had given him the relevant tax returns prepared by her accountant and reports from

2

Internal Revenue Service agents showing that the Shellys owed less than the amount claimed by the government in its lawsuit. In January 2010, the federal court granted summary judgment against the Shellys, found them liable for $520,810.35 in unpaid taxes, and ordered that tax liens be foreclosed on their home. In the district court opinion, the judge explained that the Shellys' legal argument suffered from "one significant, fatal flaw": "they offered no evidence of any kind."

{¶ 6} Despite this result, between March 2009 and January 2010, Carr billed Shelly $70,272 in fees relating to the federal tax lawsuit, and she paid him a total of $65,190. The board found that these fees were excessive—mostly because Carr's billing invoices did not match his work product. For example, in his April 2009 invoice, Carr billed four hours for a client conference that according to Shelly, lasted about 45 minutes. Similarly, in his May 2009 invoice, Carr billed 16 hours for document review, but according to Shelly, he later seemed unfamiliar with the documents at a deposition. And Carr billed 14.5 hours for preparation of his memorandum in opposition to the government's summary judgment motion, even though the document was only eight pages and did not include any supporting materials.

{¶ 7} The board also found that Carr failed to honor his agreement with relator's lawyer-referral service. As a participant, Carr agreed that in the event he obtained a client through the service, he would remit 15 percent of any fees over $200 from that client to the service within ten days of receiving the fee. While Carr remitted fees in May, June, and July 2009 relating to his representation of the Shellys, he did not pay any percentage in the months of September through December, even though he received additional money from Carol Shelly during this time period. Moreover, on December 17, 2009, Carr reported to the service that the Shellys' case had closed and that no additional fees had been paid to him. The record shows, however, that Carr filed his opposition to the government's

motion four days later, on December 21, 2009. Further, Carr continued to work on and bill for the Shellys' case through January 2010, and he received a payment of $4,650 from Carol Shelly on January 6, 2010. Ultimately, based on the amount that Shelly paid him less the $200 deductible, Carr should have remitted $9,748.50 to the service, but he paid only $1,430. And at his deposition, Carr refused to acknowledge the wrongful nature of his conduct by testifying that he had met his obligations under the referral-service agreement.

{¶ 8} Based on these findings, the board found that Carr's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law), 8.4(a) (prohibiting a lawyer from violating or attempting to violate the Ohio Rules of Professional Conduct), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We agree.

{¶ 9} We also agree with the board's recommendation to dismiss the charge under Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation) for insufficient evidence. And we also dismiss the charge under Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), because neither the master commissioner nor the board made any findings with respect to this allegation.

**Sanction**

**{¶ 10}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 11}** We have already identified Carr's ethical breaches of duties owed to his clients and the legal profession. The board found no mitigating factors but found five of the aggravating factors listed in BCGD Proc.Reg. 10(B)(1), including a prior disciplinary offense, dishonest or selfish motive, lack of cooperation in the disciplinary process, submission of false statements or other deceptive practices during the disciplinary process, and a refusal to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(a), (b), (e), (f), and (g).

**{¶ 12}** For precedent, the board cited *Columbus Bar Assn. v. Torian*, 106 Ohio St.3d 14, 2005-Ohio-3216, 829 N.E.2d 1210, and *Cincinnati Bar Assn. v. Brown*, 121 Ohio St.3d 445, 2009-Ohio-1249, 905 N.E.2d 184, to support its recommendation of an indefinite suspension. Both cases reiterate our consistent holding that neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension from the practice of law. *Torian* at ¶ 17; *Brown* at ¶ 9.

An indefinite suspension is an appropriate sanction when a lawyer violates the standards of professional competence, diligence, and integrity by neglecting to complete promised legal services, misappropriating client funds, and failing to promptly

return client funds and other property to which the client is entitled.

*Id. See also Cleveland Metro. Bar Assn. v. Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825 (indefinite suspension warranted in a default proceeding for neglect of client matters, charging a clearly excessive fee, and failing to cooperate in the ensuing disciplinary proceeding). In addition, we have previously noted that when neglect of client matters and failure to cooperate "are coupled with dishonesty in any form, an indefinite suspension is all but guaranteed." *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23.

{¶ 13} Having considered Carr's conduct, the profusion of aggravating factors, the absence of any mitigating factors, and the sanctions previously imposed for comparable conduct, we agree with the board that the appropriate sanction is an indefinite suspension. Accordingly, Jeffrey Alan Carr is hereby indefinitely suspended from the practice of law in the state of Ohio. Costs are taxed to Carr.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

William G. Chris, Bar Counsel, and Milton C. Rankins, Vincent J. Alfera, and Linda Chugh Ulinski, for relator.

_____

6