NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5095

ERIE-HURON COUNTY BAR ASSOCIATION *v.* ZELVY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Erie-Huron Cty. Bar Assn. v. Zelvy,* Slip Opinion No. 2018-Ohio-5095.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed six-month suspension.*

(No. 2018-0812—Submitted July 18, 2018—Decided December 20, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-026.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Robert Zelvy, of Sandusky, Ohio, Attorney Registration No. 0032086, was admitted to the practice of law in Ohio in 1969.

**{¶ 2}** In 2017, relator, Erie-Huron County Bar Association, charged Zelvy with collecting an excessive fee and other professional misconduct while managing his late uncle's affairs. The parties entered into stipulations of fact, aggravating

and mitigating factors, and misconduct, in which Zelvy admitted to some of the charges and relator agreed to dismiss other alleged rule violations. The parties also jointly recommended that Zelvy serve a conditionally stayed six-month suspension, but they could not agree on whether Zelvy should be ordered to make restitution to his uncle's estate.

{¶ 3} After a hearing, a three-member panel of the Board of Professional Conduct dismissed the withdrawn charges as well as two stipulated rule violations but found that Zelvy engaged in the remaining stipulated misconduct. The panel also adopted the parties' proposed sanction and recommended that Zelvy pay $6,249 in restitution. The board adopted the panel's report in its entirety.

{¶ 4} For the reasons explained below, we accept the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 5} In 2015, Zelvy's uncle, Alvin Stein, requested that Zelvy serve as his agent and update his will. Stein also signed a durable power of attorney naming Zelvy as his attorney-in-fact. According to Zelvy, Stein did not trust his own children and therefore requested Zelvy's assistance in handling his affairs. Although Stein initially instructed Zelvy to charge his usual fee for the representation, they later agreed that Zelvy would charge $250 an hour as his attorney fee, which was a discount from Zelvy's standard hourly rate of $350. Zelvy understood that he would perform legal and nonlegal services for his uncle, but he and Stein did not discuss a separate hourly rate for nonlegal tasks.

{¶ 6} Stein thereafter gave Zelvy cash that he had previously kept in a safe deposit box. Zelvy failed to inventory the money or to deposit it into his client trust account. Instead, he placed the money in a new safe deposit box that he opened at a different bank. Throughout the representation, Stein periodically gave Zelvy additional funds—either for safekeeping or to make payments on Stein's behalf—and Zelvy kept the money in the new safe deposit box until distributing as Stein

directed. Zelvy also paid his own attorney fees out of those funds. Zelvy, however, failed to keep any records of the cash received from Stein or the amounts disbursed.

{¶ 7} Between June 2015 and March 2016, Zelvy received $16,249 for his services on behalf of his uncle. Although Zelvy recorded the work he completed and provided bills to his uncle, he failed to differentiate between legal and nonlegal tasks. For example, Zelvy billed his $250 hourly legal rate for law-related tasks, such as reviewing contracts for the sale of Stein's home, and for nonlegal work that he performed in his capacity as Stein's caretaker or attorney-in-fact, such as supervising his healthcare, taking him shopping, or running errands with him.

{¶ 8} After Stein died in March 2016, Zelvy delivered to Stein's two children the property that he had in his possession, including $22,000 in cash. Stein's daughter later filed a grievance against Zelvy, alleging that he had charged an excessive fee and failed to properly account for the funds that her father had entrusted to him.

{¶ 9} Zelvy stipulated—and the board found—that by charging a legal fee for nonlegal services, he violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee). Zelvy also admitted—and the board found—that by failing to deposit Stein's cash into his client trust account and failing to account for those funds, Zelvy violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property) and 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held).

{¶ 10} Based on Zelvy's timesheet and notes, the board determined that of the 65 hours Zelvy billed his uncle, 40 hours were devoted to legal services and 25 hours for nonlegal services. Zelvy initially argued that he should be permitted to a collect a reduced hourly fee—for example, at a rate that a paralegal would charge— for his nonlegal services, especially considering that he had charged his uncle a

discounted rate for legal services. The board found, however, that because Zelvy and Stein never discussed a separate charge for Zelvy's nonlegal work, he could not collect any fees for those hours. Therefore, the board concluded that Zelvy should have charged Stein only $10,000 for his 40 hours of legal work at the rate of $250 an hour and that Zelvy must return to Stein's estate the remaining $6,249 he collected as legal fees for nonlegal work. Zelvy has waived any objections to the board's findings and recommendation.

{¶ 11} We agree with the board's findings of misconduct.

**Sanction**

{¶ 12} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 13} The board found one mitigating factor—that Stein was a vulnerable client due to his age and condition. *See* Gov.Bar R. V(13)(B)(8). In mitigation, the board noted that Zelvy lacks a prior disciplinary record and submitted evidence of good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (5).

{¶ 14} As noted above, the board recommends that we suspend Zelvy for six months, with the entire suspension stayed on conditions, including that he make restitution to Stein's estate. A stayed six-month suspension "falls within the range of sanctions that we have imposed in connection with the charging of excessive fees," *Akron Bar Assn. v. Carr*, 131 Ohio St.3d 210, 2012-Ohio-610, 963 N.E.2d 802, ¶ 17, especially when the attorney has not yet made restitution or committed additional misconduct, *see, e.g.*, *id.* at ¶ 19 (attorney suspended for six months, stayed on conditions, including restitution, for charging an excessive fee); *Cuyahoga Cty. Bar Assn. v. Cook*, 121 Ohio St.3d 9, 2009-Ohio-259, 901 N.E.2d 225 (attorney suspended for six months, stayed on conditions, including restitution, for charging an excessive fee, failing to deposit unearned fees into his client trust

account, and failing to maintain records of client funds in his possession); *Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268 (attorney suspended for six months, stayed on conditions, for charging an excessive fee, continuing a representation that created a conflict of interest, and engaging in conduct prejudicial to the administration of justice); *Toledo Bar Assn. v. Johnson*, 121 Ohio St.3d 226, 2009-Ohio-777, 903 N.E.2d 306 (attorney suspended for six months, stayed on conditions, for charging two clients an excessive fee, impermissibly sharing fees with another lawyer, and failing to deposit unearned fees into his client trust account).

{¶ 15} Accordingly, we adopt the board's recommended sanction. Robert Zelvy is hereby suspended from the practice of law for six months, with the entire suspension stayed on the conditions that he (1) make restitution to Stein's estate in the amount of $6,249 within 90 days of our disciplinary order, (2) submit to a six-month period of monitored probation pursuant to Gov.Bar R. V(21) to ensure compliance with the rules regulating client trust accounts, and (3) refrain from any further misconduct. If Zelvy fails to comply with a condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Zelvy.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Murray & Murray Co., L.P.A., and Joseph A. Galea; and Nicholas J. Smith, Bar Counsel, for relator.

Charles J. Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.

_____