DISCIPLINARY COUNSEL *v.* BANDMAN.

[Cite as *Disciplinary Counsel v. Bandman*,

125 Ohio St.3d 503, 2010-Ohio-2115.]

*Attorneys at law — Misconduct — Misappropriation of trust assets — Indefinite suspension.*

(No. 2009-2316 — Submitted February 24, 2010 — Decided May 20, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-035.

_____

**Per Curiam**.

{¶ 1} Respondent, Marc Benjamin Bandman of Lewis Center, Ohio, Attorney Registration No. 0038487, was admitted to the practice of law in Ohio in 1987. Based upon its findings that respondent committed multiple violations of the Rules of Professional Conduct in administering a client's family trust, the Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice indefinitely. We adopt the board's findings of misconduct and the recommended sanction.

**Misconduct**

{¶ 2} In April 2009, relator, Disciplinary Counsel, filed a complaint charging respondent with violations of Prof.Cond.R. 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's own personal interests), 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting conduct prejudicial to the administration of justice), and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice

law). These alleged violations arose from respondent's conduct in writing checks drawn on a client's family trust account, payable to himself, his business, and his fiancée and business partner without the knowledge or approval of the grantor or her granddaughter, who served as her attorney-in-fact.

{¶ 3} The stipulated facts and testimony at the panel hearing demonstrate, and the board found, that the client had worked for respondent's mother and her family for a number of years and had helped raise him from infancy. Respondent considered her to be his "surrogate mom or grandmother." At the time of the hearing in this matter, the client was 96 years old.

{¶ 4} In October 2005, at the client's request, respondent prepared the family trust. Pursuant to the client's wishes, the trust agreement designated respondent as the trustee. The client executed the trust agreement on November 2, 2005, and funded the trust with $59,249.83 she received from the sale of her home.

{¶ 5} Respondent waited until June 2007 to submit a bill for preparation of the trust and other estate-planning tasks. The client's attorney-in-fact paid the $6,000 invoice with funds held outside of the trust. In the interim, the client was diagnosed with dementia in 2006.

{¶ 6} Respondent testified that he did not initially intend to charge a fee for administering the trust but that the client insisted that he should be paid for his services. When he eventually decided to charge for his services, he failed to advise either the client or her attorney-in-fact. Instead, in April 2007, respondent began writing checks drawn on the trust account and made payable to himself, his business, and his business partner and fiancée. While he testified that some of the money represented earned fees, he also acknowledged that to alleviate his own financial difficulties, he "borrowed" money from the trust on a short-term basis, believing that his actions would not affect anybody.

**{¶ 7}** From April 2007 to March 2008, respondent wrote 31 checks, totaling $60,050, without the knowledge or consent of the client or her attorney-in-fact. As of June 18, 2008, only $4,805.18 remained in the trust account. Although respondent testified that he considered the majority of the money he withdrew to be a loan, he did not create or sign a promissory note setting forth the terms for repayment.

**{¶ 8}** In the spring of 2008, respondent advised the client's attorney-in-fact that he had improperly taken funds from the trust but did not share the trust account records or advise her that she might want to speak with another attorney before agreeing to resolve the matter. Nor did he obtain a written waiver of this inherent conflict of interest. On June 24, 2008, respondent repaid $45,000 to the trust, representing the amount he claimed to have borrowed, without interest. As of the date of the hearing, respondent remained the trustee of the family trust.

**{¶ 9}** Respondent acknowledged that he and relator were unable to reach an agreement as to what fees, if any, he was entitled to receive for services he allegedly provided to the trust. At the panel hearing, respondent claimed that the $45,000 he repaid to the trust represented money that he had "borrowed" and that the remaining balance of $15,050 represented legitimate payments to himself and to his fiancée for services rendered on behalf of the trust. Despite the fact that respondent charged administration fees equaling approximately 25 percent of the trust assets, he testified that the client's family had not questioned him about any of the charges or, to his knowledge, filed a claim with the Client Security Fund.

**{¶ 10}** Respondent testified that he wrote five checks on April 16, 2007, but dated them as if they had been issued on April 15, April 30, June 30, September 30, and December 31, 2006. He admitted that he wrote misleading and inaccurate notations on the memo line for some of the 31 checks, falsely indicating that those checks represented payments for services provided to the trust. He further admitted that after the client's attorney-in-fact began to request

bank statements or other documentation regarding the trust assets, he provided her with a December 2007 bank statement that he had altered to (1) reflect that the account balance was $53,210.82 on December 18, 2007, when the actual balance on that date was only $43,702.62, and (2) conceal a $2,500 check that he had written to himself that had cleared the account in November 2007.

{¶ 11} In addition to these findings of the board, we also note that respondent testified that he failed to keep contemporaneous records of the hours he devoted to trust business, preparing only a "recap" of the work performed at a later time. Moreover, the charges for some of the services he claims to have rendered are questionable, at best. For example, respondent testified that he charged one-half hour for reviewing the trust's December 2005 bank statement, and one hour for his fiancée to review that document and enter the statement's information into an accounting record. Yet the bank statement reflects only the beginning account balance and a single transaction – the deposit of $181.65 in accrued interest.

{¶ 12} Similarly, for the first quarter of 2006, respondent claims to have billed five hours, two hours at his rate and three hours at his fiancée's rate, for "Trust administration including reviewing statements and entry into accounting record and filing paperwork and reviewing bank rates and charges." Yet the bank statements for the months of November 2005 through April 2006, like the December 2005 statement, reflect only a monthly deposit of accrued interest. Furthermore, none of the statements reveal any bank charges that would require review.

{¶ 13} The parties stipulated and the board found that respondent's conduct violated Prof.Cond.R. 1.7(a)(2), 8.4(c), 8.4(d), and 8.4(h). The record demonstrates by clear and convincing evidence that respondent violated his duties to both his client and the trust by appropriating trust assets for his own benefit and concealing his actions by (1) falsely dating checks to make it appear as though he

had routinely billed the trust for services rendered, (2) making false and misleading notations on checks asserting that they represented payment for the quarterly administration of the estate,  and (3) altering a bank record to conceal his wrongful actions.  Respondent's actions created a conflict of interest between his own interests and those of his client, which he failed to disclose to his client. These actions involving misappropriation, misrepresentation, and deceit are also inherently prejudicial to the administration of justice and adversely reflect upon respondent's fitness to practice law.  Therefore, we accept the board's findings of misconduct.

### Sanction

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases.  *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.   In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").  *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 15}** The board noted that respondent has spent a significant portion of his legal career focused upon technological issues related to the practice of law. After passing the bar exam, he was employed by the Ohio attorney general's office, where he set up the first e-mail system for the National Association of Attorneys General.  He later started his own business in records management and performed some consulting work.  The work he performed for this client and the trust was the only legal work for which he charged a fee.  He did not maintain malpractice insurance, because he did not have any other clients.

**{¶ 16}** The board found that four of nine aggravating factors weighed in favor of a more severe sanction, including (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, and (4) the vulnerability of and resulting harm to the victim. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (h).

**{¶ 17}** In mitigation, the parties stipulated and the board found that the respondent does not have a prior disciplinary record and that he has demonstrated a cooperative attitude toward the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). The board noted that respondent has exhibited significant remorse for his actions and paid restitution of $45,000 to the trust. The board also considered that respondent claimed to have self-reported his actions to Disciplinary Counsel in 2008 on the advice of an attorney friend, who had filed a complaint with Disciplinary Counsel.

**{¶ 18}** Having weighed these factors, the board recommends that we indefinitely suspend respondent's license to practice law, with reinstatement conditioned upon proof that he has made full restitution, including interest, to the trust, or reimbursed the Client Security Fund for any claims paid as the result of his misconduct.

**{¶ 19}** We have previously recognized that permanent disbarment is the appropriate sanction for cases involving the misappropriation of client funds. See, e.g., *Cuyahoga Cty. Bar Assn. v. Churilla* (1997), 78 Ohio St.3d 348, 350, 678 N.E.2d 515. This is because "[t]he continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897. As the board notes, however, we have previously imposed indefinite suspensions in misappropriation cases, based in part upon the existence of mitigating factors. See, e.g., *Akron Bar Assn. v. Dietz*, 108 Ohio St.3d 343, 2006-Ohio-1067, 843 N.E.2d 786, ¶ 23 (mitigating factors included payment of restitution, waiver of fees, no prior discipline during career of more than 20 years,

and good character); *Disciplinary Counsel v. Nagorny*, 105 Ohio St.3d 97, 2004-Ohio-6899, 822 N.E.2d 1233, ¶ 15 (mitigating factors included payment of restitution, good character, remorse).

{¶ 20} Having weighed respondent's conduct and the aggravating and mitigating factors, and having considered the sanctions imposed for comparable conduct, we adopt the board's recommended sanction of an indefinite suspension, with reinstatement conditioned upon proof that respondent has made full restitution, including interest, to the trust, or reimbursed the Client Security Fund for any claims paid as the result of his misconduct. Accordingly, Marc Benjamin Bandman is indefinitely suspended from the practice of law in the state of Ohio. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

Alvin E. Matthews Jr., for respondent.

_____