DAYTON BAR ASSOCIATION *v.* PARISI.

[Cite as *Dayton Bar Assn. v. Parisi,* 131 Ohio St.3d 345, 2012-Ohio-879.]

*Attorneys at law—Misconduct—Six-month stayed license suspension.*

(No. 2011-0340—Submitted June 7, 2011—Decided March 8, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 09-064.

_____

**Per Curiam**.

{¶ 1} Respondent, Georgianna I. Parisi of Dayton, Ohio, Attorney Registration No. 0022538, was admitted to the practice of law in Ohio in 1982. In August 2009, relator, Dayton Bar Association, filed a complaint alleging that Parisi had violated the Code of Professional Responsibility and Rules of Professional Conduct by representing both the proposed guardian and ward in a guardianship proceeding, collecting legal fees from her client's account without court approval while the application for guardianship was pending, and collecting a clearly excessive fee from an elderly client with diminished mental capacity.[1]

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing, at which it received the parties' stipulations of fact, witness testimony, and numerous exhibits. Having considered the evidence, the panel found that Parisi had engaged in a conflict of interest and conduct prejudicial to the administration of justice and had charged a clearly excessive fee. The board adopted the panel's findings of fact and misconduct and its recommendation that Parisi be suspended from the practice of law for six months,

---

1. Relator charged Parisi with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. When both the former and current rules are cited for the same act, the allegation constitutes a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

with the entire suspension stayed on the condition that she commit no further misconduct.

{¶ 3} Both parties have objected to the board's report. Parisi challenges the sufficiency of the evidence, raises constitutional challenges to several of the ethical rules that she has been found to have violated, and seeks dismissal of relator's complaint. Relator argues that the clearly excessive fee charged by Parisi is tantamount to misappropriation and therefore warrants a period of actual suspension.

{¶ 4} For the reasons that follow, we overrule the objections of both parties and adopt the board's findings of fact and misconduct, as well as its recommended sanction.

## Misconduct

### *The Demming Guardianship*

{¶ 5} The board found that Parisi began to provide legal services for Sylvia Demming, a 93-year-old woman who claimed that she was being held against her will in a nursing home. Concerned about Demming's financial welfare and having observed her confusion and disorientation, on November 8, 2007, Parisi applied for guardianship in the Warren County Probate Court. In her guardianship application, Parisi alleged that Demming was incompetent as a result of Alzheimer's-related memory loss, and Parisi submitted an evaluation from a licensed physician diagnosing Demming with dementia. Seven weeks later, Parisi had Demming sign a durable power of attorney designating Parisi as her attorney-in-fact. The next month, Parisi withdrew her own application and filed a separate application for guardianship on behalf of Demming's niece.

{¶ 6} Believing that the court no longer had jurisdiction after Demming informed the court that she had left the county and intended to move out of state, Parisi sent her bill to Demming's niece for review. The guardianship proceeding was not dismissed as Parisi had anticipated; but acting as Demming's attorney-in-

fact, Parisi paid her own fees of more than $18,000 without first obtaining the court's approval. The probate court later removed Parisi as counsel for both women, and Parisi returned the money to Demming's account.

{¶ 7} The board found that by representing both Demming and her niece in the guardianship proceeding, Parisi violated Prof.Cond.R. 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests). The panel also found that by obtaining a power of attorney over her client's affairs while her guardianship application was pending and using it to pay $18,820 of her own legal fees, Parisi violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). Citing the duplication of other claimed violations and the insufficiency of the evidence, the board recommended the dismissal of alleged violations of Prof.Cond.R. 8.4(a) (prohibiting a lawyer from violating or attempting to violate the Ohio Rules of Professional Conduct) and (b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness).

{¶ 8} Parisi challenges the board's findings of fact and misconduct with respect to her representation of Demming. First, she argues that this court has held as a matter of law that simultaneous representation of a proposed ward and an applicant for guardianship does not present a conflict of interest that requires disqualification. In support of this argument, Parisi cites *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794; *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E.2d 676; and *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683.

{¶ 9} None of the cases, however, stands for the proposition that an applicant for guardianship has no interest in the determination of the proposed

ward's competence or incompetence or that an applicant cannot have an interest that is adverse to that of the proposed ward. Indeed, the far-reaching and life-altering consequences of an incompetency determination—involving a judicial determination that a mental or physical illness or disability has left a person so mentally impaired that the person is incapable of taking proper care of the person's self or property—create an inherent conflict between the proposed ward and the applicant for guardianship, even if guardianship is ultimately in the proposed ward's best interest. Nevertheless, Parisi contends that Prof.Cond.R. 1.14(b) and 1.7(b) and the comments thereto permit attorneys to simultaneously represent both the proposed ward and the applicant for guardianship and that any contrary interpretation of those rules cannot constitutionally be applied to her because she had no notice that her conduct was unethical.

{¶ 10} Prof.Cond.R. 1.14(b) provides: "When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken, and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian."

{¶ 11} Prof.Cond.R. 1.14(a) directs that "the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client," and comment 9[2] to the rule emphasizes, "A lawyer who undertakes to represent a

---

2. Comment 9 to Prof.Cond.R. 1.14 provides, "In an emergency where the health, safety, or a financial interest of a person with seriously diminished capacity is threatened with imminent and irreparable harm, a lawyer may take legal action on behalf of such a person even though the person is unable to establish a client-lawyer relationship or to make or express considered judgments about the matter, when the person or another acting in good faith on that person's behalf has consulted with the lawyer. Even in such an emergency, however, the lawyer should not act unless the lawyer reasonably believes that the person has no other lawyer, agent, or other representative available. The lawyer should take legal action on behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and

person in such an exigent situation has the same duties under these rules as the lawyer would with respect to a client." Thus, the emergency provisions of Prof.Cond.R. 1.14 do not entirely abrogate a lawyer's duties to the client under the Rules of Professional Conduct. Therefore, when taking actions authorized by Prof.Cond.R. 1.14, the lawyer must still determine whether the representation of one client will be directly adverse to the other and whether there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for one client will be materially limited by the lawyer's responsibilities to another client. Prof.Cond.R. 1.7(a).[3]

{¶ 12} The American Bar Association ("ABA") Standing Committee on Ethics and Professional Responsibility has addressed this situation. ABA Committee on Ethics & Professionalism, Formal Ops. No. 96-404 (1996) (discussing clients under disability). The ABA recognizes that Model Rule of Professional Conduct 1.14 (1983, as amended), which is identical to our Prof.Cond.R. 1.14 in all material respects, permits a lawyer to file a petition for

---

irreparable harm. A lawyer who undertakes to represent a person in such an exigent situation has the same duties under these rules as the lawyer would with respect to a client."

3. Prof.Cond.R. 1.7 provides:

"(a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

"(1) the representation of that client will be directly adverse to another current client;

"(2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

"(b) "A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

"(1) the lawyer will be able to provide competent and diligent representation to each affected client;

"(2) each affected client gives informed consent, confirmed in writing;

"(3) the representation is not precluded by division (c) of this rule [protecting certain representations regardless of client consent]."

guardianship of a client when no less-restrictive alternatives are available, but concludes that "a lawyer with a disabled client should not attempt to represent a third party petitioning for a guardianship over the lawyer's client." The ABA observes: "Rule 1.14(b) creates a narrow exception to the normal responsibilities of a lawyer to his client, in permitting the lawyer to take action that by its very nature must be regarded as 'adverse' to the client. However, Rule 1.14 does not otherwise derogate from the lawyer's responsibilities to his client, and certainly does not abrogate the lawyer-client relationship. In particular, it does not authorize a lawyer to represent a third party in seeking to have a court appoint a guardian for his client. Such a representation would necessarily have to be regarded as 'adverse' to the client and prohibited by Rule 1.7(a), even if the lawyer sincerely and reasonably believes that such representation would be in the client's best interests, unless and until the court makes the necessary determination of incompetence. Even if the court's eventual determination of incompetence would moot the argument that the representation was prohibited by Rule 1.7(a), the lawyer cannot proceed on the assumption that the court will make such a determination. In short, if the lawyer decides to file a guardianship petition, it must be on his own authority under Rule. 1.14 and not on behalf of a third party, however well-intentioned." Id.

{¶ 13} We concur in this analysis and conclude that the guardianship proceeding that Parisi initiated on behalf of Demming's niece, no matter how well-intentioned, was necessarily adverse to Demming. Therefore, Parisi's actions in representing both women in the guardianship proceeding violated Prof.Cond.R. 1.7, regardless of Demming's assent or objection to the process. And in light of Demming's diminished capacity, as evidenced by Parisi's own petition for guardianship, we cannot countenance Parisi's arguments that Demming was either competent to execute the durable power of attorney or capable of giving informed consent to the dual representation. See *Disciplinary*

*Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 4-6 (finding that an attorney had engaged in conduct adversely reflecting upon his fitness to practice law by witnessing his mother-in-law execute a power of attorney just 29 days after filing a complaint in which he had alleged that she was incompetent).

{¶ 14} Parisi's constitutional objections to the application of Prof.Cond.R. 1.7 and 1.14 to her conduct are also without merit. " 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 221, 673 N.E.2d 1253, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. In this case, Prof.Cond.R. 1.14 expressly permits the attorney *to consult* with persons who may take action to protect the client, *to seek* the appointment of a guardian in some circumstances, and *to reveal* client confidences otherwise protected by Prof.Cond.R. 1.6 to the extent reasonably necessary to protect the client's interests. It does not, however, authorize the attorney *to represent* third parties in guardianship proceedings against a client or otherwise permit any departure from Prof.Cond.R. 1.7, which generally prohibits attorneys from representing multiple clients who have conflicting interests. Because Prof.Cond.R. 1.14 clearly delineates the conduct permitted when an attorney represents a client with diminished capacity and does not purport to alter the prohibition against engaging in conflicts of interest set forth in Prof.Cond.R. 1.7, we reject Parisi's argument that those rules are void for vagueness and cannot constitutionally be applied to her.

**{¶ 15}** We also reject Parisi's claims that she was entitled to an evidentiary hearing prior to her disqualification in the probate matter. We have held that a court must hold an evidentiary hearing and issue findings of fact in ruling on a motion for disqualification of an individual or of an entire firm when an attorney has left a law firm that represents one party to an action and has joined a firm that represents an opposing party. *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 688 N.E.2d 258, syllabus. But we have never held that a court must hold an evidentiary hearing before ruling on every motion for disqualification. Nor are we willing to impose such a requirement when an attorney has admitted that she represents two clients, it is apparent that those clients have inherently conflicting interests, and the entire basis of the legal action is to determine that one of those clients is incompetent to handle his or her personal affairs—incompetence that would presumably render the client unable to give informed consent to the conflict.

**{¶ 16}** Parisi's claim that her use of Demming's power of attorney to pay her legal fees during the pendency of the guardianship proceeding was not prejudicial to the administration of justice is likewise without merit. Regardless of Parisi's claims that the probate court no longer had jurisdiction over the guardianship proceeding due to Demming's purported departure from the county and her expressed intent to move to Florida, the action remained pending at the time she paid her own fees. And as the board found, the very power of attorney that Parisi used to make the unauthorized payment was obtained at a time when she had reason to believe that Demming was incompetent. Therefore, we have no difficulty concluding that Parisi's conduct violated Prof.Cond.R. 8.4(d).

**{¶ 17}** Having rejected Parisi's factual and constitutional objections, we adopt the board's findings of fact and misconduct with respect to count one of relator's complaint.

### *The Royal John Greene Matter*

{¶ 18} In August 2004, Royal John Greene, a widower in his mid-70s whose extended family was either unwilling or unable to assist in his care, appointed Parisi his attorney-in-fact. At that time, it was apparently understood that Parisi would be paid at her usual attorney hourly rate for legal and nonlegal services, but this agreement was not reduced to writing. While Greene was competent at the time that he retained Parisi, his physical and mental health declined significantly during the course of her representation. As early as November 2005, Parisi's records indicate that Greene was "sometimes forgetful." Billing records express concern about his increased memory loss in January 2006, profound cerebral atrophy and small strokes in August, and confusion in December.

{¶ 19} Parisi provided some traditional legal services for Greene, including the preparation of estate-planning documents and the administration of his wife's estate. She also advised him about several annuities that he had purchased. The bulk of her time, however, was devoted to the nonlegal tasks of managing Greene's life—overseeing his living arrangements, supervising his medical care, transporting him to doctors' appointments and dialysis treatments, reconciling his bank and brokerage statements, and delivering spending money and an occasional meal to him. The board found that Parisi had done a good job taking care of Greene and indicated that without her assistance, he probably would not have been able to achieve his goal of avoiding a nursing home.

{¶ 20} The board found that most of the work that Parisi and her staff performed did not require legal skill and that in many instances, the client's demands for services resulted in costs that were not proportionate to the monetary importance of the matters involved.

{¶ 21} Having reviewed Parisi's voluminous and detailed records regarding the services provided to Greene, the board found that her conduct

violated Prof.Cond.R. 1.5(a) and DR 2-106(A) (both prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee). But citing the insufficiency of the evidence, the board recommends that we dismiss alleged violations of Prof.Cond.R. 8.4(a) and DR 1-102(A)(1) (prohibiting a lawyer from violating or attempting to violate the Ohio Rules of Professional Conduct or a Disciplinary Rule), Prof.Cond.R. 8.4(c) and DR 1-102(A)(4) (each prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and Prof.Cond.R. 8.4(d) and DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 22} Parisi objects to the board's finding that she charged a clearly excessive fee, arguing that among other things, (1) such a finding impairs her constitutional rights to contract, (2) Prof.Cond.R. 1.5(a) and DR 2-106(A) are void for vagueness and therefore cannot be constitutionally applied to her, (3) because relator did not offer any expert testimony regarding the reasonableness of her fees, there is insufficient evidence to support a finding that her fee was clearly excessive, and (4) Prof.Cond.R. 1.2 ("Scope of Representation and Allocation of Authority Between Client and Lawyer"), 1.4 ("Communication"), and 5.7 ("Responsibilities Regarding Law-Related Services") required her to abide by Greene's decisions concerning the objectives of her representation and the means of pursuing those objectives.

{¶ 23} This court possesses the inherent, original, and exclusive jurisdiction to regulate all matters relating to the practice of law. Section 2(B)(1)(g), Article IV of the Ohio Constitution. Nonetheless, rules adopted by this court must comply with the state and federal constitutions. *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 27, quoting *Christensen v. Bd. of Commrs. on Grievances & Discipline* (1991), 61 Ohio St.3d 534, 537, 575 N.E.2d 790. While the Fourteenth Amendment to the United States

Constitution and Section 1, Article I of the Ohio Constitution protect the freedom of contract, we have long recognized that that freedom is not absolute, but is subservient to the public welfare. See, e.g., *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney* (1916), 95 Ohio St. 64, 115 N.E. 505, paragraph one of the syllabus. And "compensation for advocacy has never been treated as an ordinary debt or contractual right, but has since antiquity been regulated by the prevailing governmental authority possessing the power to control the practice of law." *Shimko* at ¶ 47.

{¶ 24} Prof.Cond.R. 1.5 and DR 2-106(A) prohibit a lawyer from charging or collecting an illegal or clearly excessive fee and set forth a number of factors to aid attorneys in determining whether their fees are reasonable. Those factors include the time, labor, and skill involved in the representation; the likelihood that the acceptance of the employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar services; the amount involved and the results obtained; the nature and length of the professional relationship; the experience, reputation, and ability of the lawyer; and whether the fee is fixed or contingent. Prof.Cond.R. 1.5(a)(1) through (8). The prohibition against clearly excessive fees is a reasonable restriction of the freedom of contract that permits attorneys to charge a fee for their services, while also preserving the integrity of the legal profession. See *Shimko*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 55 ("virtually all aspects of the practice of law in general, and remuneration in particular, have always been considered to lie within the regulatory jurisdiction of the granting or admitting authority and to be distinct from other types of contractual arrangements").

{¶ 25} We have previously denounced as a clearly excessive fee charging legal fees for nonlegal services. *Disciplinary Counsel v. Hunter*, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707, ¶ 17, 25 (attorney rates for administrative tasks, including picking up mail, depositing checks, paying bills, and arranging

for lawn care, house cleaning, and the delivery of necessities result in a clearly excessive fee); *Cincinnati Bar Assn. v. Alsfelder*, 103 Ohio St.3d 375, 2004-Ohio-5216, 816 N.E.2d 218, ¶ 22-23 (attorney rates for social interaction with a client constituted a clearly excessive fee). The factors set forth in Prof.Cond.R. 1.5(a) and the decisions of this court give attorneys a reasonable opportunity to know what is prohibited and to conduct themselves accordingly. Thus, Parisi's freedom-of-contract and void-for-vagueness arguments are without merit.

{¶ 26} Parisi charged over $220,000 for services provided by herself and her staff and for cost reimbursements during the nearly three years that she represented Greene. Her billings, however, were replete with charges at her attorney rate for nonlegal services like arranging and attending Greene's doctors' appointments, handling mundane tasks related to Greene's cable-television and magazine subscriptions, researching local feline clubs, and arranging for the replacement of Greene's watch battery. She billed approximately $13,000 in fees and expenses for overseeing the partial restoration of Greene's beloved Jaguar.

{¶ 27} The board found that Parisi's hourly rates for legal work were reasonable and that Greene believed that the services Parisi performed were important, had demanded (for the most part and sometimes irrationally) that she perform them, and had rejected some services when Parisi sought to have others provide them. Although relator did not present any expert testimony about the charges for Parisi's nonlegal services, it is clear that the bulk of those services required little, if any, legal skill and that the cost of providing the services was disproportionate to the benefit that Greene received. There is no question that those charges specifically addressed by relator and the scores of nonlegal services billed at attorney rates in Parisi's 404-page billing record are clearly excessive.

{¶ 28} Parisi's claims that Prof.Cond.R. 1.2, 1.4, and 5.7 authorized her conduct must also fail. There is no dispute that these rules require attorneys to consult with and abide by decisions concerning the objectives of their

representation and the means by which they are pursued, promptly inform the client of decisions or circumstances that require the client's informed consent, and permit attorneys to perform law-related services on their clients' behalf. But nothing in those rules permits attorneys to violate their ethical obligations in pursuing their clients' objectives or to charge attorney rates for nonlegal services at the behest of a client.

{¶ 29} Accordingly, we overrule each of Parisi's objections, adopt the board's findings of fact and misconduct with respect to the Greene representation, and dismiss the alleged violations of Prof.Cond.R. 8.4(a), (c), and (d) and DR 1-102(A)(1), (4), and (5) as recommended by the board.

**Sanction**

{¶ 30} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 31} The board found three aggravating factors, including Parisi's selfish motive in taking her attorney fees from Demming's account, her commission of multiple offenses, and the vulnerability of the clients harmed by her conduct. See BCGD Proc.Reg. 10(B)(1)(b), (d), and (h).

{¶ 32} As mitigating factors, the board found that Parisi had no prior disciplinary record in almost 30 years of practice, that she returned the attorney fees she had collected from Demming's account before the probate court issued a formal order for her to do so, that she cooperated in the disciplinary proceedings,

and that she demonstrated her good reputation and character apart from the charged misconduct. See BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). Although Parisi denied having committed any ethical violations, the board also found that she fully acknowledged that she should not have taken her fee from Demming during the pendency of the guardianship proceeding and that it would have been a better practice to show Greene her monthly bills, to have him sign and date them, and to have him personally sign the checks for his legal fees. She also acknowledged that she should have arranged for someone else to review her monthly bills before Greene paid them.

{¶ 33} The board recommends that we impose a six-month suspension for Parisi's misconduct but, citing the panel's belief that she will not repeat her transgressions and the difficult choices Parisi faced in representing these clients as their mental and physical conditions deteriorated, recommends that we stay the entire suspension on the condition that she commit no further misconduct. In support of this recommendation, the board observes that in the absence of fraud or dishonesty, we have imposed comparable stayed suspensions for attorneys who have charged or collected a clearly excessive fee. See *Akron Bar Assn. v. Watkins*, 120 Ohio St.3d 307, 2008-Ohio-6144, 898 N.E.2d 946, ¶ 6, 15 (imposing a six-month stayed suspension on an attorney who charged his hourly attorney rate for nonlegal services while serving as the trustee of a revocable living trust); *Cincinnati Bar Assn. v. Alsfelder*, 103 Ohio St.3d 375, 2004-Ohio-5216, 816 N.E.2d 218, ¶ 25, 34 (imposing a one-year stayed suspension for an attorney who allowed a client to consult him as a friend while charging her for his time as a lawyer); *Disciplinary Counsel v. Dettinger*, 121 Ohio St.3d 400, 2009-Ohio-1429, 904 N.E.2d 890, ¶ 4, 10 (imposing a six-month stayed suspension for an attorney who borrowed money from a client without disclosing the inherent conflict of interest or advising the client, or upon the client's death, his executor, to seek independent counsel); *Disciplinary Counsel v. Jacobs*, 109 Ohio St.3d

252, 2006-Ohio-2292, 846 N.E.2d 1260, ¶ 3-5, 8 (publicly reprimanding an attorney for representing a husband and wife in their divorce and, while it was pending, representing each one on other matters without disclosing the conflict of interest).

{¶ 34} Both parties object to the recommended sanction. Parisi seeks dismissal of the complaint. Citing *Disciplinary Counsel v. Bandman*, 125 Ohio St.3d 503, 2010-Ohio-2115, 929 N.E.2d 442, *Toledo Bar Assn. v. Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823, 933 N.E.2d 1091, and *Disciplinary Counsel v. Johnson*, 113 Ohio St.3d 344, 2007-Ohio-2074, 865 N.E.2d 873, relator argues that Parisi's misconduct warrants an actual suspension from the practice of law with specific conditions imposed upon any stayed portion of that suspension.

{¶ 35} Unlike Parisi's conduct, however, the misconduct in each of relator's cited authorities involved fraud, misrepresentation, or deceit, and two of the cases involved findings that the attorney had misappropriated client funds. Bandman withdrew $60,050 from an elderly client's trust account without the knowledge or consent of the client or her attorney-in-fact and altered a bank record and payment records to conceal his misdeeds. *Bandman*, 125 Ohio St.3d 503, 2010-Ohio-2115, 929 N.E.2d 442, ¶ 7, 10. Because Bandman had misappropriated client funds, we indefinitely suspended him from the practice of law and conditioned reinstatement on proof that he has made full restitution. Id. at ¶ 18-19. And in *Stahlbush*, we imposed a two-year suspension with the second year stayed on conditions upon finding that the attorney had deceptively inflated her billable hours for court-appointed work, billing more than 24 hours per day in three instances. *Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823, 933 N.E.2d 1091, ¶ 2-3, 11, 17.

{¶ 36} Of the cases cited by relator, Johnson's conduct is perhaps the most comparable to Parisi's. Johnson represented two elderly sisters—initially as the attorney-in-fact for one sister, and as a court-appointed guardian for the other.

*Johnson*, 113 Ohio St.3d 344, 2007-Ohio-2074, 865 N.E.2d 873, ¶ 5. He sought to recover more than $800,000 that had been misappropriated by his clients' former attorney-in-fact, but failed to perform a cost-benefit analysis before pursuing their claims. Id. at ¶ 71. While he charged a reasonable hourly rate for his time and maintained detailed billing records, he overworked the client's case, billing almost $160,000 to collect $197,683.45. Id. at ¶ 24, 26, 71. We rejected Johnson's argument that he was acting at the behest of the sister for whom he had initially served as attorney-in-fact, observing that she became mentally incompetent during the representation, as evidenced by a June 1999 order appointing Johnson as her guardian. Id. at ¶ 12, 74. Johnson had also billed the sisters separately for his services and failed to disclose to the probate court the fees and expenses that he had collected pursuant to the power of attorney. Id. at ¶ 17. In determining the appropriate sanction for Johnson's misconduct, we observed that deliberate efforts to deceive generally warrant an actual suspension from the practice of law, and we imposed a one-year suspension, with the last six months stayed on conditions, including the payment of restitution, and a six-month period of probation. Id. at ¶ 85, 89.

{¶ 37} In this case, Parisi has engaged in a conflict of interest by representing both Demming and the niece who sought her guardianship, has engaged in conduct prejudicial to the administration of justice by paying her own fees during the guardianship proceeding, and has charged a clearly excessive fee for nonlegal services that she provided to Greene. But unlike the situations cited by relator, there have been no findings that Parisi has engaged in fraud, misrepresentation, or deceit. She returned the $18,820 payment to herself in the Demming matter and has settled litigation with Greene's heirs with her agreement to forgo approximately $25,000 in additional billings and with a $21,000 payment from her malpractice carrier. Furthermore, the panel believes that Parisi will not repeat her transgressions, and we defer to that credibility determination because

the panel members saw and heard her testimony firsthand. *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 38} Having considered Parisi's misconduct, the aggravating and mitigating factors present, and the sanctions imposed for comparable offenses, we overrule the parties' objections and adopt the board's recommended sanction of a six-month suspension, all stayed on the condition that Parisi commit no further misconduct. Accordingly, we suspend Georgianna I. Parisi from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that she commit no further misconduct. If Parisi fails to comply with that condition, the stay will be lifted, and she will serve the entire six-month suspension. Costs are taxed to Parisi.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, and MCGEE BROWN, JJ., concur.

CUPP, J., concurs in part and dissents in part.

O'CONNOR, C.J., dissents and would accept the relator's recommended sanction of an indefinite suspension.

LANZINGER, J., dissents and would impose a one-year suspension with six months stayed.

_____

**CUPP, J., concurring in part and dissenting in part.**

{¶ 39} Although I concur in the decision of the court, I would also add as a condition of the stayed suspension that Parisi submit to the monitoring of her practice by an attorney designated by relator during the entire term of the stayed six-month suspension.

_____

Gary C. Schaengold and Mark A. Tuss, for relator.

Konrad Kuczak and Dianna M. Anelli, for respondent.

_____