**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Buttars***, Slip Opinion No. 2020-Ohio-1511.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1511

DISCIPLINARY COUNSEL *v.* BUTTARS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Buttars*, Slip Opinion No. 2020-Ohio-1511.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Indefinite suspension.*

(No. 2019-1722—Submitted January 29, 2020—Decided April 21, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-031.

_____

**Per Curiam.**

{¶ 1} Respondent, Austin Roan Buttars, of Dublin, Ohio, Attorney Registration No. 0091338, was admitted to the practice of law in Ohio in 2013.

{¶ 2} In June 2018, relator, disciplinary counsel, charged Buttars with misappropriating a client's money, overcharging the client, and committing other professional misconduct. In October 2018, the Board of Professional Conduct

stayed Buttars's disciplinary proceeding pending the outcome of criminal charges against him relating to some of the same allegations. In May 2019, Buttars was convicted of theft in violation of R.C. 2913.02, a fourth-degree felony, and based on that conviction, in June 2019, we suspended his license to practice law on an interim basis pursuant to Gov.Bar R. V(18)(A)(4). *See In re Buttars*, 156 Ohio St.3d 1342, 2019-Ohio-2177, 130 N.E.3d 310.

{¶ 3} Relator thereafter amended the disciplinary complaint, and Buttars stipulated to the charged misconduct. After a hearing before a panel of the board, the board issued a report finding that Buttars had engaged in the stipulated misconduct and recommending that we indefinitely suspend him from the practice of law, with no credit for the time he has served under his interim felony suspension, and require him to make full restitution to the victim as a condition of any future reinstatement. Neither party has objected to the board's report.

{¶ 4} Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

## Misconduct

### *Count one*—State v. Buttars

{¶ 5} In May 2015, E.H. sought Buttars's assistance in a dispute with her landlord. According to relator and Buttars, E.H. suffers from mental illness, alcoholism, and depression. The law firm for which Buttars worked as an independent contractor entered into a written fee agreement with E.H. to represent her in the landlord-tenant matter on a pro bono basis, provided that she pay $20 a month during the representation. Buttars, however, entered into a separate written fee agreement with E.H. in which he agreed to represent her "in any capacity" for an hourly rate of $250. Around the time when the fee agreements were executed, E.H. had advised Buttars that although she did not have money to pay him, she expected to receive a substantial inheritance after her mother passed away.

{¶ 6} Buttars worked with E.H. and her landlord to prevent her immediate eviction. But in July 2015, the landlord filed an eviction complaint, which was dismissed after E.H. voluntarily agreed to vacate the premises. For the eviction matter, Buttars charged E.H. for over 30 hours of legal services at the $250 hourly rate—despite the law firm's agreement with her.

{¶ 7} In September 2015, E.H.'s mother died, and E.H. thereafter requested that Buttars administer the estate. A few months later, Buttars formed a law firm with another attorney. Buttars and his law firm performed various actions to prepare and administer the estate until its termination in August 2016. During his representation of E.H., Buttars also performed various nonlegal, personal services for her.

{¶ 8} For work performed between the time when E.H. first retained Buttars and the end of 2016, Buttars charged her $69,785—approximately $9,000 for the eviction matter and the remainder for administering the estate and handling E.H.'s personal matters. During some of that same period, Buttars's law firm charged E.H. $20,841.44 for probate and personal services—for total fees of $90,626.44. Buttars paid himself and his firm by making multiple online transfers from E.H.'s bank accounts to his personal, business, and firm accounts.

{¶ 9} In December 2016, Franklin County Adult Protective Services received a referral regarding E.H., and it later filed a grievance against Buttars. During his disciplinary proceeding, Buttars admitted that in addition to transferring $90,626.44 out of E.H.'s accounts, he removed $57,084.41 from her accounts to pay his own personal and business expenses—although none of those latter funds were earned. Buttars was later indicted for theft from a person in a protected class, a second-degree felony. *See* R.C. 2913.02(B)(3). In May 2019, he pleaded guilty to a fourth-degree felony theft charge and the trial court sentenced him to two years

of community control and ordered him to complete 100 hours of community service and make restitution to E.H. in the amount of $29,450 within two years.[1]

{¶ 10} Based on this conduct, the parties stipulated and the board found that Buttars violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board expressly found that Buttars's misconduct was sufficiently egregious to warrant finding the separate violation of Prof.Cond.R. 8.4(h). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

*Count two—Excessive fees for nonlegal services*

{¶ 11} As noted above, Buttars performed various nonlegal, personal services for E.H., including helping her with tasks around her home, helping her look for a new apartment and a new car, researching ways to manage her inheritance money, organizing her finances and paying her bills, shopping for her, and mowing her lawn. For some of those services, he charged his $250 hourly legal rate. Occasionally, he charged his law firm's $125 hourly paralegal rate, although the services were neither performed by a paralegal nor legal in nature. On some days, he billed E.H. twice, using both the legal rate and the paralegal rate, for what appeared to be the same personal services. Buttars also admitted that his fees for the eviction matter were excessive because the law firm for which he had worked as an independent contractor had agreed to represent her on a pro bono basis.

---

1. As explained below, Buttars had repaid E.H. $62,500 prior to his sentencing.

{¶ 12} Based on this conduct, Buttars stipulated and the board found that he committed another violation of Prof.Cond.R. 1.5(a).

*Count three—Misrepresentation to a court*

{¶ 13} In August 2016, Buttars signed and filed a certificate of termination in the estate case of E.H.'s mother. On the probate-court form, he checked a box indicating that all attorney fees had been "waived by counsel of record." Buttars and his law firm, however, had received substantial fees for administering the estate. Buttars stipulated and the board found that by checking the box, he violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from making a false statement of fact or law to a tribunal).

*Count four—Conflict of interest*

{¶ 14} In May 2016, Buttars transferred $10,000 from one of E.H.'s bank accounts into his savings account and later used that money for personal and business expenses. This transfer was part of the overall $57,084.41 that he stole from her throughout the representation. For this transfer, however, Buttars falsely advised E.H. that he had mistakenly removed the money. Instead of returning it, Buttars had E.H. sign a promissory note stating that she would "loan" him $10,000 and he would repay her in monthly installments. The note, however, did not advise E.H. of the desirability of seeking independent counsel. Nor was E.H. given a reasonable opportunity to seek the advice of independent counsel prior to signing the note. In January 2017, after protective services had become involved, Buttars took out a personal loan and repaid the "loan" to E.H.

{¶ 15} Based on this conduct, the parties stipulated and the board found that Buttars violated Prof.Cond.R. 1.8(a)(2) (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing to seek and is given a reasonable opportunity to seek the advice of independent legal counsel) and 8.4(c).

**{¶ 16}** We agree with the board's findings of misconduct in counts one through four.

### Restitution

**{¶ 17}** The parties stipulated—and the board agreed—that although Buttars transferred $147,710.85 from E.H.'s accounts, he and his law firm had earned only $19,036.55, leaving $128,674.30 as the total amount that he had either stolen or overcharged. Buttars repaid to E.H. $12,500 in January 2017 and $50,000 during his criminal proceeding. Therefore, at the time of his disciplinary hearing, he owed E.H. restitution in the amount of $66,174.30, which included the $29,450 that he had been ordered to make as part of his criminal sentence. Because the criminal case did not account for the amounts that Buttars had overcharged E.H., the restitution amount in this disciplinary matter is substantially greater than that ordered in Buttars's criminal case.

### Sanction

**{¶ 18}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 19}** As aggravating factors, the board found that Buttars had acted with a dishonest and selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2) through (4). The board also noted that E.H. was a particularly vulnerable client, especially considering that she had relied on Buttars to take care of most of her affairs. *See* Gov.Bar R. V(13)(B)(8).

**{¶ 20}** In mitigation, the board found that Buttars has no prior disciplinary record, he had made full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings, he had submitted evidence of good character or reputation, and criminal penalties have been imposed for some of his misconduct. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6). The board also noted

6

that Buttars had made a good-faith effort toward restitution by repaying some amounts to E.H. before his sentencing, *see* Gov.Bar R. V(13)(C)(3), and that at his disciplinary hearing, he accepted responsibility for his misconduct and appeared truly remorseful. Although Buttars acknowledged that he had not established the existence of a mitigating mental disorder under Gov.Bar R. V(13)(C)(7), the board noted that he entered into a two-year agreement with the Ohio Lawyers Assistance Program ("OLAP") in November 2017 and that he was in compliance with that contract.

{¶ 21} "The presumptive sanction for an attorney's misappropriation of client funds is disbarment, but that presumption may be tempered with sufficient evidence of mitigating or extenuating circumstances." *Disciplinary Counsel v. Harter*, 154 Ohio St.3d 561, 2018-Ohio-3899, 116 N.E.3d 1255, ¶ 33. The board accepted the parties' proposed sanction and recommends that we indefinitely suspend Buttars—rather than disbar him—based on his acceptance of responsibility, sincere remorse, and commitment to make things right with E.H. To support its recommendation, the board cited two cases in which we indefinitely suspended attorneys who similarly misappropriated funds while serving in positions of trust.

{¶ 22} In *Disciplinary Counsel v. Zapor*, 127 Ohio St.3d 372, 2010-Ohio-5769, 939 N.E.2d 1230, an attorney misappropriated more than $20,000 from a ward's account while he was the court-appointed guardian, used those funds to pay personal expenses, made false statements to the probate court about his actions, and eventually pleaded guilty to a fifth-degree felony charge of theft. The aggravating and mitigating factors in *Zapor* are comparable to those here. *See id.* at ¶ 7. Because the attorney had confessed to the misappropriation, seemed genuinely contrite, and had taken steps to resolve some addictive behaviors—although those behaviors had not qualified as a mitigating factor—we adopted the board's

recommended sanction of an indefinite suspension, with no credit for the time he had served under his interim felony suspension. *Id.* at ¶ 11-12.

{¶ **23**} And in *Disciplinary Counsel v. Bandman*, 125 Ohio St.3d 503, 2010-Ohio-2115, 929 N.E.2d 442, an attorney misappropriated more than $60,000 from an elderly client's trust account, attempted to conceal his actions by altering a bank record and payment records, and created a conflict of interest between his own interests and those of his client, which he failed to disclose to the client. We indefinitely suspended the attorney based in part on the existence of several mitigating factors, including his clean disciplinary record, cooperation in the disciplinary process, significant remorse, and efforts to make restitution. *Id.* at ¶ 16-20. We conditioned his reinstatement on payment of full restitution. *Id.* at ¶ 20.

{¶ **24**} We agree with the board that the mitigating evidence in this case, especially Buttars's acceptance of responsibility and sincere remorse, militate against permanent disbarment. We therefore accept the board's recommended sanction. *See also Disciplinary Counsel v. Thomas*, 146 Ohio St.3d 429, 2016-Ohio-1582, 57 N.E.3d 1142 (indefinitely suspending an attorney—giving no credit for the time he had served under an interim felony suspension and conditioning his reinstatement on payment of restitution—for misappropriating over $200,000 from wards he had been appointed to protect and attempting to conceal those thefts by filing false inventories in the probate court).

## Conclusion

{¶ **25**} Austin Roan Buttars is indefinitely suspended from the practice of law in Ohio, with no credit for the time he has served under his interim felony suspension imposed on June 4, 2019. In addition to the requirements of Gov.Bar R. V(25), his reinstatement shall be conditioned on the submission of proof that he has made restitution in the amount of $66,174.30 to E.H. or reimbursed the

Lawyers' Fund for Client Protection for any amount awarded to E.H. as a result of his misconduct.  Costs are taxed to Buttars.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

––––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Austin R. Buttars, pro se.

––––––––––––––––––