[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Zoller and Mamone,* Slip Opinion No. 2015-Ohio-4307.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4307

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* ZOLLER AND MAMONE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Zoller and Mamone,* Slip Opinion No. 2015-Ohio-4307.]**

*Attorneys—Misconduct—Remand to Board of Professional Conduct for determination of amount of restitution to be paid.*

(No. 2014-1389—Submitted January 14, 2015—Decided October 21, 2015.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-060.

_____

**Per Curiam**.

{¶ 1} Respondents, Nancy Anne Zoller, Attorney Registration No. 0037933, of Lyndhurst, Ohio, and Edward James Mamone, Attorney Registration No. 0039310, of Cleveland, Ohio, were both admitted to the practice of law in Ohio in 1987. Both were associates in the Cleveland law firm of Gurney, Miller & Mamone ("GM&M") in 2004 when the activity that is at issue in this case began.

They are the children of Joseph Anthony Mamone, who was a partner in that firm but has since resigned, with disciplinary action pending, from the practice of law. *In re Resignation of Mamone*, 139 Ohio St.3d 1206, 2014-Ohio-1630, 10 N.E.3d 721.

{¶ 2} On November 14, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[1] certified a complaint submitted by relator, Cleveland Metropolitan Bar Association, to the full board. The complaint alleged that respondents had engaged in several ethical violations related to services they had performed for Eleanor Locher, a client of GM&M, over a number of years.[2] The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors.

{¶ 3} A panel of the board conducted a hearing on June 9, 2014, and considered the stipulations, documentary evidence, and witness testimony. The panel found that Zoller had charged the client excessive legal fees and had committed other ethical violations in administering an account the law firm had set up to handle the client's funds and to pay the client's bills. The panel found that Edward Mamone had also committed several ethical violations in administering that account.

{¶ 4} As sanctions for their misconduct, the panel recommended that Zoller be suspended from the practice of law for one year, all stayed on the condition that

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

[2] Relator charged respondents with misconduct under the applicable Disciplinary Rules of the Code of Professional Responsibility for acts occurring before February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Acts occurring thereafter were charged as violations of the Rules of Professional Conduct. When both the former and current rules are cited for the same act, the allegation constitutes a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1. Moreover, ethical lapses occurring both before and after the effective date of the Rules of Professional Conduct can be viewed as continuing conduct that constitutes only one violation. *See Allen Cty. Bar Assn. v. Schramski*, 124 Ohio St.3d 465, 2010-Ohio-630, 923 N.E.2d 603, ¶ 4, fn. 1.

she commit no further misconduct, and that Edward Mamone be suspended for six months, all stayed, on the same condition. Additionally, although relator did not request that either respondent be required to make restitution, the panel concluded that it would be appropriate for Zoller to refund, as a condition of her suspension being stayed, at least a portion of the attorney fees that should not have been collected from the client. The panel recommended that relator should determine the proper amount of restitution. The panel did not address whether Edward Mamone should be required to make restitution.

{¶ 5} The board adopted the panel's findings of fact and misconduct and recommends that Zoller be suspended for one year and Edward Mamone be suspended for six months, with the suspensions fully stayed on the condition that they commit no further misconduct. However, the board specifically declined to accept the panel's determination that Zoller should be required to pay some amount of restitution. No party has objected to the board's report.

{¶ 6} For the reasons that follow, we disagree with the board's recommendation that Zoller should not be required to make any restitution, and we remand this cause to the board for a determination of the amount of restitution she should make as a consequence of her misconduct that led to overcharging the client for legal work. We determine that Edward Mamone also should be responsible to pay restitution commensurate with his misconduct, and we remand to the board for a determination of the amount of restitution he should make.

**Facts**

{¶ 7} In June 2004, Eleanor Locher retained GM&M to represent her in the administration of the estate of her late husband, Ralph S. Locher, a former mayor of Cleveland and a former justice of the Supreme Court of Ohio. At the time of his death, Ralph Locher had less than $200,000 in probate assets but more than $1 million in nonprobate assets. After her husband died, Mrs. Locher moved into the Judson Manor retirement facility, but she moved back home after about a week

because she hated being there. By November 2004, Mrs. Locher increasingly was relying on the law firm's attorneys to help her handle her affairs and invest her assets.

{¶ 8} Most relevant to the misconduct of the two respondents in this case, Zoller set up an account titled "Gurney, Miller & Malone, Special Account Locher" ("the special account") on behalf of Mrs. Locher, as the primary vehicle for managing her money. This "partnership type" account did not bear interest, was not identified as an IOLTA account or a client trust account, and was not designated as a fiduciary account. Mrs. Locher and the two respondents were the only signatories on the account.

{¶ 9} The overall goals of the plan the firm's attorneys developed with Mrs. Locher were to permit her to be able to live independently and to afford around-the-clock care while still living in her home. Another objective was to facilitate Mrs. Locher's desire to make generous gifts to family members and to her charitable causes. Payments from Ralph Locher's monthly pension and income generated from multiple other accounts held by Mrs. Locher continually flowed into the special account. Most of Mrs. Locher's bills (including her household expenses, substantial payments to live-in health aides, and significant costs for medications) were paid from the special account, and cash withdrawals for Mrs. Locher's use were constantly taken from the account. It was estimated at the hearing that Mrs. Locher gave away between $300,000 and $400,000 to relatives and thousands more to her church and to other causes in the years after Ralph Locher died.

{¶ 10} Zoller wrote most of the checks drawn on the special account in the firm's handling of routine tasks for Mrs. Locher, but Edward Mamone also wrote some of the checks. Although he was not a designated signatory, Joseph Mamone also wrote and signed a number of checks drawn on the special account. Joseph Mamone exercised primary control of the firm's attorney-client relationship with

4

Mrs. Locher and frequently met with her to deliver cash and to have lunch. Although the parties stipulated that Joseph Mamone was ostensibly primarily responsible for preparing accountings regarding the special account and that Zoller also bore some responsibility for accountings, complete records were not maintained and the records that were maintained were often inaccurate.

{¶ 11} It was agreed that GM&M would charge a monthly maintenance fee—specifically meant to compensate the firm for handling Mrs. Locher's money, paying her bills, and arranging for her care and household needs—to the special account starting in November 2004. Initially, the fee was $500 a month, but the fee was raised to $750 a month in February 2008 and then lowered to $250 a month in February 2009. The fee was stopped entirely in March 2010. Mrs. Locher paid a total of $30,900 in maintenance fees to GM&M from that account.

{¶ 12} GM&M also charged Mrs. Locher a large amount of separate attorney fees, many of which have never been fully documented or explained. The parties stipulated that the firm collected a total of $329,200 in attorney fees from Mrs. Locher during its representation of her. Most of these attorney fees were charged from late 2004 until August 2006. During that time period alone, $258,200 in separate attorney fees were paid to the firm or to Joseph Mamone directly. Most of the attorney fees were paid from accounts other than the special account, through checks signed by Mrs. Locher, apparently at Joseph Mamone's behest. The parties stipulated that respondents were not aware of the fees that had been paid directly to their father until the disciplinary investigation commenced.

{¶ 13} Many of the separate attorney fees went toward nonlegal tasks and were billed at $300 an hour. The parties stipulated that some of the attorney fees paid through the special account come under the classification of routine fees that should have been covered by the monthly maintenance fee for that account, meaning that Mrs. Locher was charged twice for some of the services provided in addition to being overcharged for the nonlegal tasks. Further, it is undisputed that

monthly reconciliations of the special account were not performed, despite Prof.Cond.R. 1.15(a)(5)'s requirement to do so. Over the time that this account was active, it was overdrawn on 34 occasions and incurred overdraft fees in excess of $1,000 that were paid from the account.

{¶ 14} Mrs. Locher died at age 95 on December 20, 2010, with only modest assets remaining, including approximately $289 in the special account and the house that she had lived in until her death, which was the subject of a reverse mortgage. In charging her the stipulated amount of almost $330,000 in attorney fees for its performance, the law firm employing the three lawyers who handled her affairs had received an average of approximately $55,000 in attorney fees from her in each year of the representation; when only the first two years of the representation are considered, Mrs. Locher paid the firm an average of well over $125,000 a year in attorney fees.

{¶ 15} In its closing argument before the panel, relator argued for up to a one-year stayed suspension for Zoller and up to a public reprimand for Edward Mamone. The basis of relator's position was that respondents' father, Joseph Mamone, was "the primary person who engaged in the majority of the misconduct" and "we have been successful in getting him off of the street."

{¶ 16} After the disciplinary hearing, the panel found that Zoller and Edward Mamone had engaged in conduct that violated a number of Rules of Professional Conduct, as stipulated by the parties. Specifically, Zoller was found to have violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting a clearly excessive fee), 1.15(a) (requiring a lawyer to hold a client's funds in an interest-bearing account with a clearly identifiable fiduciary title), 1.15(a)(2) (requiring a lawyer to maintain a complete record of an account held by the lawyer containing a client's funds), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of an account held by the lawyer containing a client's funds). Edward Mamone was found to

have violated Prof.Cond.R. 1.15(a), 1.15(a)(2), and 1.15(a)(5). These were the same violations that his sister had committed except that he was not found to have collected excessive fees.[3]

## Restitution

{¶ 17} Although relator did not pursue restitution against either respondent, the panel's report addressed whether Zoller should be made to pay restitution in part, in full, or not at all. While recognizing that Zoller realized no personal benefit from the excessive fees, the panel concluded that Zoller was in part responsible for charging and allowing the excessive fees and that she was in part responsible for denying the Locher family a refund of those fees when Joseph Mamone was still practicing law. In its consideration, the panel noted that after the disciplinary investigation began, Zoller "prepared improper post hoc billing statements filled with clearly nonlegal services, all in an effort to justify her firm's retention of fees for what the statements mischaracterized as legal services." Therefore, given the unusual circumstances, the panel concluded that it would be equitable for Zoller to pay back at least a portion of the excessive attorney fees as a condition of her suspension being stayed. The panel stated that relator should make the determination as to the proper amount of restitution.

{¶ 18} Apparently because Edward Mamone did not personally charge Mrs. Locher excessive fees, was less directly involved in the firm's dealings with her than his sister was, and did not prepare any "post hoc billing statements," the panel did not recommend that he should make any restitution. However, in explaining why it recommended a stayed suspension for him, the panel recognized that he had

---

[3] The panel determined that additional allegations that Zoller violated Prof.Cond.R. 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and allegations that Edward Mamone violated Prof.Cond.R. 1.5(a), 8.1(a), and 8.4(c) were not proven, and it therefore dismissed those allegations.

failed to exercise proper oversight and "was derelict in his duty" to ensure that Mrs. Locher's funds were properly protected.

{¶ 19} The board specifically rejected the panel's recommendation that Zoller be made to pay partial restitution, stating that there was a "lack of evidence to establish a specific amount of restitution owed."

{¶ 20} We disagree with the board's decision not to require the payment of partial restitution and agree with the panel's recommendation that Zoller should be ordered to pay some amount of restitution. For some of the same reasons that compel our conclusion as to Zoller, we further determine that Edward Mamone should also be responsible to pay some amount of restitution, due to his failure to oversee the account at issue.

{¶ 21} We agree with the panel's recommendation that based on Zoller's position of authority over the special account and her fiduciary responsibility to oversee the safekeeping of the funds in the account, she was ultimately responsible for some of the excessive fees that were paid by Mrs. Locher. Although the majority of the excessive charges may have been attributable to the actions of her father and may have come from other accounts, some of the excessive charges were billed for nonlegal and duplicative work that she herself did or purportedly did, as indicated by her stipulation that she violated Prof.Cond.R. 1.5(a). Moreover, she had a clear ethical obligation to oversee the special account, for which she was a signatory. Edward Mamone was also a signatory on the special account, and he also was subject to this clear ethical obligation,

{¶ 22} There was much made by the parties at the hearing of the asserted fact that respondents' father, Joseph Mamone, was the mastermind behind the ongoing, improper charging of excessive fees and that respondents were but minor players who were restrained from acting in the best interests of their client, at least in part, because of the familial relationship that existed between them and Joseph Mamone. However, there is no basis in the law to support this position. Neither

case law nor the Rules of Professional Conduct provide for any kind of exception when one is complicit in permitting a relative to charge a client extraordinarily excessive legal fees, and we will not create such an exception here.

{¶ 23} Respondents were acting as licensed attorneys in the state of Ohio and, as such, were responsible for protecting the interests of their client. Those responsibilities included preventing their father, who was never a signatory on the special account, from writing and signing inappropriate checks drawn on that account. While Joseph Mamone may have been primarily responsible for the charging of excessive fees, his plot would have failed but for the role played by respondents in this scheme. The collective silence of Zoller and Edward Mamone occasioned by their failure to oversee the special account was vital to their father's success in overcharging Mrs. Locher. Even though many of the excessive fees were paid through checks signed by Mrs. Locher on other accounts that respondents were not responsible for, excessive fees were also paid from the special account, and had respondents properly monitored the special account on which their father was not a signatory, they would have discovered obvious improprieties that would have alerted them that their father was taking advantage of Mrs. Locher.

{¶ 24} We disagree with the board's ultimate conclusion that Zoller should be excused from paying partial restitution because of the lack of evidence establishing a specific amount of restitution owed. It is apparent that the dearth of evidence was not caused by relator's failure to uncover evidence but, rather, the fact that Zoller and the members of the law firm failed to keep accurate records as she and the firm members were required to do. Rewarding Zoller for her violation of the Rules of Professional Conduct sends the wrong message. Accordingly, we do not accept the board's decision regarding Zoller's lack of responsibility to make restitution. Because Edward Mamone also committed disciplinary violations that involve his failure to adequately ensure that the special account was being handled properly, these considerations apply to him as well.

**{¶ 25}** Having considered the conduct of Zoller and Edward Mamone and the findings of fact and recommendations of both the panel and the board, we disagree with the recommendation of the board on the issue of restitution as to both respondents. Therefore, we remand this cause for additional proceedings.

## Conclusion

**{¶ 26}** This case is remanded to the board for further consideration as to both respondents. The board is instructed to conduct any additional proceedings necessary to determine how much restitution would be fair and appropriate for respondents to pay and to determine how that restitution should be apportioned between the two respondents in this matter.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Tucker Ellis, L.L.P., and Susan M. Audey; Lustig, Evans & Lucas Co., L.P.A., and Susan M. Evans; and K. Ann Zimmerman, Bar Counsel, and Heather M. Zirke, Assistant Bar Counsel, for relator.

Gallagher Sharp, Timothy T. Brick, and Monica A. Sansalone, for respondent Nancy Anne Zoller.

Brian F. Toohey, for respondent Edward James Mamone.

————————————