**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Zoller and Mamone,* **Slip Opinion No. 2016-Ohio-7639.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7639

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* ZOLLER AND MAMONE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Zoller and Mamone,* Slip Opinion No. 2016-Ohio-7639.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspensions.*

(No. 2014-1389—Submitted June 1, 2016—Decided November 8, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2013-060.

————————————————

**Per Curiam.**

**{¶ 1}** Respondents, Nancy Anne Zoller of Lyndhurst, Ohio, Attorney Registration No. 0037933, and Edward James Mamone of Cleveland, Ohio, Attorney Registration No. 0039310, were both admitted to the practice of law in Ohio in 1987. Both were associates in the Cleveland law firm of Gurney, Miller &

Mamone ("GM&M") in which their father, Joseph Anthony Mamone, was a partner.

{¶ 2} In November 2013, relator, Cleveland Metropolitan Bar Association, charged Zoller and the Mamones with multiple ethical violations related to services they had performed over a number of years for their client, Eleanor Locher, who had passed away in 2010. We accepted Joseph Mamone's resignation from the practice of law in Ohio with disciplinary action pending, effective April 18, 2014. *In re Resignation of Mamone*, 139 Ohio St.3d 1206, 2014-Ohio-1630, 10 N.E.3d 721.

{¶ 3} In an August 11, 2014 report, the Board of Commissioners on Grievances and Discipline (now known as the Board of Professional Conduct) found that Zoller had charged Locher excessive legal fees and that Zoller and Edward Mamone had committed other ethical violations in administering an account that the law firm had established to manage Locher's funds. The board recommended that Zoller be suspended from the practice of law for one year and that Mamone be suspended for six months, with both suspensions fully stayed on the condition that they engage in no further misconduct. But the board rejected the hearing panel's recommendation that Zoller be required to make restitution to Locher's estate.

{¶ 4} The matter was first submitted to this court on January 14, 2015. In an October 21, 2015 opinion, we summarized the board's findings of fact, conclusions of law, and recommendations, but we did not adopt them at that time. Instead, we remanded the matter for further proceedings because we disagreed with the board's recommendation that neither Zoller nor Mamone should be required to make restitution to Locher's estate. *Cleveland Metro. Bar Assn. v. Zoller and Mamone*, 144 Ohio St.3d 142, 2015-Ohio-4307, 41 N.E.3d 407.

{¶ 5} On remand, the panel conducted additional proceedings, and the parties ultimately entered into stipulations, in which Zoller agreed to make

restitution of $30,466 and Mamone agreed to make $11,116 in restitution to Locher's estate.

{¶ 6} There are no objections to any of the board's findings or recommendations.

{¶ 7} We now adopt the board's findings of fact and misconduct, its aggravating and mitigating factors, and its recommendation regarding restitution, but for the reasons that follow, we reject the board's recommended sanctions and suspend both Zoller and Mamone from the practice of law for one year.

## Misconduct[1]

{¶ 8} Locher retained GM&M in June 2004 to administer the estate of her late husband, Ralph S. Locher, a former mayor of Cleveland and a former justice of the Supreme Court of Ohio. Having come to increasingly rely on Joseph Mamone, on Zoller, and to a lesser extent on Edward Mamone, after the administration of the estate was complete, Mrs. Locher later engaged GM&M to manage her money, to pay her bills, and to handle other aspects of her financial and personal life. Mrs. Locher sought to be able to live independently in her own home, to afford around-the-clock care, and to make generous gifts to her family members and charitable causes.

{¶ 9} Zoller established an account titled "Gurney, Miller & Mamone, Special Account Locher" (the "special account") as the primary vehicle for managing Mrs. Locher's money. This "partnership type" account did not bear interest and was not identified as a fiduciary account, an Interest on Lawyer Trust Account, or a client trust account. Mrs. Locher and respondents were the only signatories on the account. Ralph Locher's monthly pension benefits and income from other accounts continually flowed into the special account, which was used to pay most of Mrs. Locher's bills (including her household expenses, substantial

---

[1] The facts of Zoller's and Mamone's misconduct are more fully set forth in *Zoller and Mamone*, 144 Ohio St.3d 142, 2015-Ohio-4307, 41 N.E.3d 407.

payments to live-in health aids, and medications). Mrs. Locher also made constant cash withdrawals from the account and gave away between $300,000 and $400,000 to relatives and thousands more to her church and other causes.

{¶ 10} Zoller wrote most of the checks drawn on the special account, but Edward Mamone wrote some of them. Joseph Mamone was not a designated signatory on the special account, but he wrote and signed a number of checks drawn on the account. He also exercised primary control of the firm's attorney-client relationship with Mrs. Locher. Although the parties stipulated that Joseph Mamone bore the primary responsibility of accounting for the funds in the special account, Edward Mamone and Zoller also shared the responsibility to account for those funds by virtue of their role as signatories. Yet, respondents did not maintain complete records or perform monthly reconciliations of the account, and the records that they did maintain were often inaccurate. As a consequence, the special account was overdrawn on 34 occasions, causing more than $1,000 in overdraft fees.

{¶ 11} To compensate GM&M for managing her money, paying her bills, and arranging for her care and household needs, Mrs. Locher agreed to pay the firm a $500 monthly maintenance fee beginning in November 2004. The fee was raised to $750 a month in February 2008, lowered to $250 a month in February 2009, and eliminated in March 2010. All told, Mrs. Locher paid $30,900 in maintenance fees to GM&M from the special account.

{¶ 12} GM&M also charged Mrs. Locher more than $329,000 in separate attorney fees, many of which have never been fully documented or explained. More than $258,000 of those fees were paid to the firm or directly to Joseph Mamone over a period of just less than two years, and many nonlegal tasks were billed at $300 per hour. Most of those fees were paid with checks signed by Mrs. Locher— apparently at Joseph Mamone's behest—from accounts other than the special account managed by respondents. The parties stipulated that respondents were not aware of the fees that Mrs. Locher paid directly to their father until the disciplinary

4

investigation commenced. But they also acknowledged that some of the attorney fees paid through the special account should have been covered by the monthly maintenance fee and that consequently, Mrs. Locher was charged twice for the same work.

{¶ 13} Consistent with the parties' stipulations, the board found that both Zoller and Mamone violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold a client's funds in an interest-bearing account with a clearly identifiable fiduciary title), 1.15(a)(2) (requiring a lawyer to maintain a complete record of an account held by the lawyer containing a client's funds), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of an account held by the lawyer containing a client's funds) and that Zoller also violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting a clearly excessive fee). We adopt the board's findings of fact and misconduct.

### Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} Based on the stipulations, exhibits, and testimony adduced at the hearing, the board found that Zoller and Mamone committed multiple offenses and caused harm to a vulnerable client. *See* Gov.Bar R. V(13)(B)(4) and (8). Mitigating factors include the absence of prior disciplinary records, the absence of dishonest or selfish motives, full cooperation in the disciplinary proceedings, and evidence of respondents' good character apart from the charged misconduct. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5).

{¶ 16} The board recommends that we suspend Zoller from the practice of law for one year, fully stayed on the condition that she engage in no further misconduct. In support of this recommendation, the board noted that Zoller was

actually responsible for overcharging Mrs. Locher and that she prepared improper post hoc billing statements showing clearly nonlegal services in an effort to justify retention of the firm's fees. Recognizing that Edward Mamone failed in his duty to oversee the special account, that his dereliction of duty facilitated additional misconduct by his father and sister, and that his violations "were not mere technical deviations from the rules with no discernible harm to the client," the board rejected Mamone's suggestion that he be publicly reprimanded for his misconduct. But also recognizing that it was Zoller, not Mamone, who was primarily responsible for the billing in Mrs. Locher's case, the board recommended that Mamone be suspended from the practice of law for six months, fully stayed on the condition that he engage in no further misconduct.

**{¶ 17}** Among the cases the board cites in support of these recommended sanctions, *Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268, is instructive. Parisi had been appointed as the attorney-in-fact for a septuagenarian whose family was either unwilling or unable to assist in his care as his health declined. She performed some traditional legal services on behalf of the client, but she devoted the majority of her time to routine tasks like overseeing his living arrangements, supervising his medical care, transporting him to appointments, reconciling his bank and brokerage statements, and delivering spending money and an occasional meal. Over the course of nearly three years, she charged the client over $220,000 for her services—largely billing for nonlegal services at her attorney rate. And unlike Zoller and Mamone, Parisi maintained more than 400 pages of records detailing the services she had provided.

**{¶ 18}** We determined that Parisi's billing practice constituted a clearly excessive fee in violation of Prof.Cond.R. 1.5(a), in part because it rendered the cost of providing the services disproportionate to the benefit that the client received. *Parisi* at ¶ 20-21 and 27. We also determined that Parisi had an inherent conflict of interest in a separate case in which she represented both an applicant for

guardianship and the proposed ward and engaged in conduct that was prejudicial to the administration of justice by obtaining a power of attorney over the proposed ward's affairs and using that power to pay her own fees without prior court approval. *Id.* at ¶ 5-13. As aggravating factors, we found that Parisi committed multiple offenses, acted with a selfish motive when she took her fees without court approval, and caused harm to vulnerable clients. But as mitigating factors, she had no prior disciplinary record, returned the fees that she had collected without court approval, cooperated in the disciplinary proceedings, and demonstrated her good character and reputation apart from the charged misconduct. *See* Gov.Bar R. V(13)(C)(1), (3), and (5). By the time of her disciplinary hearing, she had also settled litigation with her client's heirs in the initially described case with a $21,000 payment from her malpractice carrier and an agreement to forgo approximately $25,000 in additional billings.

{¶ 19} Here, Zoller and Mamone assumed the responsibilities of operating and maintaining the special account when they opened the account and agreed to be authorized signatories. But they failed to ensure that the account was a separate, interest-bearing trust account for Mrs. Locher's benefit during the six-year period in which substantial client assets passed through it. They also failed to maintain even a modicum of oversight over the account by failing to accurately record each transaction that affected the account and failing to reconcile the account against the monthly statements issued by the bank. Their abdication of these most basic duties to Mrs. Locher resulted in more than 30 overdrafts of the account and $1,000 in associated bank fees. Respondents' failures to act also facilitated the misconduct of their father, Joseph Mamone, who not only wrote and signed checks on the special account (even though he was not an authorized signatory) but who also collected excessive and undocumented legal fees from Mrs. Locher—fees that averaged approximately $55,000 each year for six years, though more than

$250,000 of those fees was actually collected in just the first two years of the representation.

**{¶ 20}** If Zoller and Mamone had properly monitored the special account, they would have discovered obvious improprieties that would have alerted them to the fact that their father was taking advantage of Mrs. Locher—an elderly client who depended on their services to remain in her own home and out of a nursing home. And if Mamone had exercised proper supervision over the account, he would have been alerted to the fact that Zoller was charging Mrs. Locher additional fees for tasks that should have been covered by the agreed-to monthly maintenance charge.

**{¶ 21}** In *Disciplinary Counsel v. Kick*, 28 Ohio St.3d 91, 93, 502 N.E.2d 640 (1986), we imposed a one-year suspension on an attorney whose primary offense was his failure to maintain complete records regarding his client trust account or review monthly bank statements for the account—failures that facilitated his secretary's theft of at least $10,000 from that account. Like Kick, Zoller and Mamone blatantly disregarded the Rules of Professional Conduct governing the safeguarding of client funds. And that conduct not only caused direct harm to a vulnerable client but also exposed that client to additional exploitation at the hands of their unscrupulous father. Their claims that they were but minor players—associates in the firm, restrained from acting in the best interest of their client because of their relationship with their father—are simply not credible given their power and corresponding obligations as designated signatories on the special account.

**{¶ 22}** Given the magnitude of the harm that Zoller and Mamone caused to Mrs. Locher—both directly and indirectly—we believe that an actual suspension from the practice of law is necessary to protect the public from future harm. We therefore reject the board's recommendation of fully stayed suspensions, and we suspend Zoller and Mamone from the practice of law in Ohio for one year.

**{¶ 23}** In our October 21, 2015 decision, we determined that Zoller and Mamone should not be excused from making partial restitution when it was their own misconduct that made it difficult to establish the precise amounts of restitution owed. *Zoller and Mamone*, 144 Ohio St.3d 142, 2015-Ohio-4307, 41 N.E.3d 407, at ¶ 24. We therefore remanded the matter to the board for further proceedings to determine how much restitution would be fair and appropriate for each of them to pay. *Id.* at ¶ 26.

**{¶ 24}** On remand, relator deposed Joseph Mamone and issued a subpoena ordering him to produce Mrs. Locher's entire file. The parties separately reviewed the records and prepared summaries detailing the work performed and billed to the special account for which Zoller and Edward Mamone were the authorized signatories. The parties also entered into a series of stipulations identifying the amounts of restitution believed to be owed by Zoller and Mamone and the rationale for calculating those amounts. The panel and board ultimately adopted the set of stipulations filed by the parties in March 2016, in which Zoller agreed to make restitution of $30,466 and Mamone agreed to make $11,116 in restitution.

**{¶ 25}** These stipulated restitution amounts were calculated and allocated as follows:

- $505 from each of Zoller and Mamone—representing one-half of the $1,010 in overdraft charges to the special account;

- $455 from each of Zoller and Mamone—representing one-half of the $910 in special-account checks written and signed by Joseph Mamone;

- $10,156 from each of Zoller and Mamone—representing one half of $20,312 in excessive fees paid from the special account; and

- $19,350 from Zoller—representing the fees for 64.5 hours of nonlegal tasks that were billed at attorney rates as calculated from Zoller's post hoc billing statements.

**{¶ 26}** We recognize that the calculation of restitution for nonlegal tasks charged at attorney rates in this case is challenging given Zoller's failure to maintain complete and contemporaneous records of the work she performed for and fees she billed to Mrs. Locher. Given the explanation provided by the parties, however, we are confident that the firm was paid for at least 64.5 hours of nonlegal work at attorney rates. Therefore, we adopt the board's recommendations regarding restitution.

**{¶ 27}** Accordingly, Nancy Anne Zoller and Edward James Mamone are suspended from the practice of law for one year. Before seeking reinstatement to the practice of law in Ohio, Zoller shall make restitution of $30,466 to Eleanor Locher's estate and Mamone shall make restitution of $11,116 to Eleanor Locher's estate. Costs of these proceedings are assessed jointly and severally against Zoller and Mamone.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and O'NEILL, JJ., concur.

LANZINGER, J., dissents and would suspend respondents for two years.

KENNEDY and FRENCH, JJ., dissent and would suspend respondent Zoller for one year and suspend respondent Mamone for six months, with both suspensions fully stayed.

_____

Tucker Ellis, L.L.P., and Susan M. Audey; Lustig, Evans & Lucas Co., L.P.A., and Susan M. Evans; and K. Ann Zimmerman, Bar Counsel, and Heather M. Zirke, Assistant Bar Counsel, for relator.

Gallagher Sharp, L.L.P., Timothy T. Brick, and Monica A. Sansalone, for respondent Nancy Anne Zoller.

Brian F. Toohey, for respondent Edward James Mamone.

_____